**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**
**2014 MSPB 49**

Docket No. SF-0752-12-0208-I-1

**Ellis A. Archerda,**

**Appellant,**

**v.**

**Department of Defense,**

**Agency.**

July 11, 2014

Brook L. Beesley, Alameda, California, for the appellant.

Christine J. Kim, Stockton, California, for the agency.

**BEFORE**

Susan Tsui Grundmann, Chairman
Anne M. Wagner, Vice Chairman
Mark A. Robbins, Member

**OPINION AND ORDER**

¶1      The agency has filed a petition for review, and the appellant has filed a cross petition for review, of the initial decision that reversed the agency's removal action and denied the appellant's disability discrimination claim.  For the following reasons, we GRANT the petition for review and DENY the cross petition for review.  As explained below, we REVERSE the administrative judge's finding that the agency failed to prove its charge, and modify the administrative judge's disability discrimination analysis, still finding that the appellant did not prove his claim that the agency violated the Rehabilitation Act of 1973.

BACKGROUND

¶2      The appellant was employed as a GS-0081-07 Firefighter at the agency's facility in San Joaquin, California.  Initial Appeal File (IAF), Tab 6, Subtab 4A. He was previously a U.S. Air Force Reservist Firefighter, deployed for overseas service in that capacity.  IAF, Tab 15 at 28.  As a result of his overseas deployments, he suffered from post-traumatic stress disorder (PTSD).  *Id.*

¶3      In August 2009, the appellant left an agency training because of severe emotional distress and was precluded from safety sensitive duties.  Hearing Compact Diskette (CD) (testimony of the agency physician).  During this timeframe, the appellant was admitted for in-patient psychiatric care at a Department of Veterans Affairs (VA) hospital and continued to receive treatment for PTSD thereafter.  IAF, Tab 15 at 28.  In February 2010, the appellant's physician explained that the appellant was taking several medications to manage his PTSD but that his medications had not produced any noticeable side effects. *Id*. at 22.  The record reflects the appellant was returned to regular work that month with no restrictions. *Id*. at 23.

¶4      Following a September 2, 2010 medical examination, during which he self-reported a 50 percent VA disability rating for PTSD, the appellant was returned to full duty with no restrictions based on an agreement that he would provide the disability report for his new VA rating to the physician assistant. *Id*. at 24-25; Hearing CD (testimony of the agency physician assistant).  The appellant, however, was restricted to administrative duties that same month after he failed to submit the disability report.  Hearing CD (testimony of the agency physician assistant).  In March 2011, a U.S. Air Force psychiatrist completed a temporary disability retirement list narrative summary for the appellant based on his PTSD.  IAF, Tab 15 at 28-30.  The psychiatrist stated that the appellant had a combined disability rating of 70 percent with 50 percent attributed to his PTSD. *Id*. at 29.

¶5    On September 21, 2010, the agency conducted an annual medical examination at a clinic located at the Defense Distribution Depot in San Joaquin, California.  IAF, Tab 6, Subtab 4G at 1, Subtab 4H at 1.  During the annual medical examination, the appellant notified the agency's physician assistant that he had recently received a disability retirement from his Firefighter position with the U.S. Air Force Reserve.  *Id.*, Subtab 4G at 1, Subtab 4H at 1.  Based on this information, the clinic requested that the appellant provide a copy of the medical documentation from the VA related to his military disability retirement in order to complete the medical examination and to find that he had the continuing capacity to meet the physical and medical requirements of his position.  *Id.*, Subtab 4G at 1, Subtab 4H at 1; Hearing CD (testimony of the agency physician and the agency physician assistant).  When the appellant did not comply with the clinic's request, the agency issued the appellant a March 8, 2011 Request for Additional Medical Information asking that he provide this documentation directly to the clinic.  IAF, Tab 6, Subtab 4O.  Effective June 6, 2011, the agency suspended the appellant for 14 days for failure to follow the instructions in the March 8, 2011 Request for Additional Medical Information.  *Id.*, Subtabs 4I, 4J, 4L.

¶6    On June 20, 2011, the agency issued the appellant another Request for Additional Medical Information.  *Id.*, Subtab 4H at 1-2.  Thereafter, the agency proposed to remove the appellant from his position based on the charge of failure to follow instructions.  *Id.*, Subtab 4G.  In support of its charge, the agency provided a narrative setting forth background information and specifying that the appellant had failed to comply with the June 20, 2011 Request for Additional Medical Information.  *Id.* at 1.

¶7    After providing the appellant with an opportunity to respond to the notice of proposed removal, the deciding official issued a decision letter sustaining the proposed penalty of removal.  *Id.*, Subtab 4B at 1-6.  The appellant was removed effective December 7, 2011.  *Id.*, Subtab 4A.

¶8    The appellant filed an appeal of his removal.  IAF, Tab 1.  In his appeal, the appellant asserted that the agency had discriminated against him based on his alleged disability and his performance of military duties.  *Id*. at 3-4.  Further, the appellant asserted that he was subjected to double punishment for the same misconduct and that the agency retaliated against him for engaging in protected equal employment opportunity (EEO) activities.  IAF, Tab 15 at 12-13, Tab 16 at 6.

¶9    Following a hearing, the administrative judge issued an initial decision reversing the agency's removal action.  IAF, Tab 27, Initial Decision (ID) at 1, 31.  The administrative judge found that the appellant failed to follow the instructions set forth in the specification listed by the agency in support of the charge.  ID at 13.  However, the administrative judge found that the agency failed to show that its instructions to the appellant in the June 20, 2011 Request for Additional Medical Information were proper.  ID at 17.  Specifically, the administrative judge found that the agency failed to show that it had the authority to require the appellant to produce documentation regarding his PTSD.  ID at 17.  Thus, the administrative judge did not sustain the agency's charge.  ID at 17.  Furthermore, the administrative judge found that the appellant failed to establish his affirmative defenses by preponderant evidence.[1]  ID at 18-31.

¶10   The agency filed a petition for review.  Petition for Review (PFR) File, Tab 1.  The appellant subsequently moved to dismiss the agency's petition, claiming that the agency failed to comply with the administrative judge's interim relief order.  PFR File, Tab 3.  In addition, the appellant filed a response to the

---

[1] On review, the appellant does not challenge the administrative judge's findings regarding his claims that the agency discriminated against him based on his performance of military duties, subjected him to double punishment for the same misconduct, and retaliated against him for his protected EEO activities.  In any event, we discern no basis for disturbing the administrative judge's findings that the appellant failed to establish these affirmative defenses.

agency's petition for review and a cross petition for review. PFR File, Tab 4. Thereafter, the agency responded to the appellant's motion to dismiss and cross petition for review. PFR File, Tabs 6, 8.

## ANALYSIS

### The agency properly provided the appellant with interim relief.

¶11    As a preliminary matter, we address the appellant's motion to dismiss the agency's petition for review due to its alleged failure to provide interim relief. PFR File, Tab 3. Where, as here, the appellant is the prevailing party in an initial decision that grants interim relief, any petition or cross petition for review filed by the agency must be accompanied by a certification that the agency has complied with the interim relief order either by providing the required interim relief or by satisfying the requirements of 5 U.S.C. § 7701(b)(2)(A)(ii) and (B). *Tisdell v. Department of the Air Force*, 94 M.S.P.R. 44, ¶ 6 (2003); 5 C.F.R. § 1201.116(a). In an appeal from an adverse action that was reversed, the agency's evidence must show, at a minimum, that it has appointed the appellant to a position carrying the appropriate title, grade, and rate of pay, effective as of the date of the initial decision. *Moore v. U.S. Postal Service*, 78 M.S.P.R. 80, 83 (1998).

¶12    We reject the appellant's contentions that the agency failed to comply with the interim relief order. PFR File, Tab 3. Along with its petition for review, the agency provided a Standard Form 50 (SF-50) showing that it had returned the appellant to his GS-07 Firefighter position effective November 19, 2012—the date of the initial decision. PFR File, Tab 1 at 8; ID at 1. The SF-50 indicates that the agency provided the appellant with the same rate of pay that he had been receiving prior to his removal. PFR File, Tab 1 at 8; IAF, Tab 6, Subtab 4A. Further, the agency submitted documentation showing that the appellant was

placed in a paid administrative leave status beginning November 19, 2012.[2]  PFR File, Tab 6 at 2, Exhibits 2-3.

¶13    Although the appellant argues that the agency failed to provide him with the required pay, this argument does not establish that the agency failed to provide interim relief.  PFR File, Tab 3 at 4.  Contrary to the appellant's assertions, the agency is required only to take appropriate administrative action by the deadline for filing the petition for review that will result in the issuance of a paycheck for the interim relief period and is not required to have paid the appellant by the deadline.  *Tisdell*, 94 M.S.P.R. 44, ¶ 8.

¶14    Further, the appellant's contention that he was entitled to overtime pay during the interim relief period is unpersuasive.  PFR File, Tab 3 at 4.  Overtime pay is only to be provided pursuant to an interim relief order when the appellant proves that he is entitled to it as a term or condition of employment by virtue of law, rule, regulation, collective bargaining agreement, or binding agency policy.  *Bahrke v. U.S. Postal Service*, 98 M.S.P.R. 513, ¶ 8 (2005).  While the appellant claims he was entitled to overtime pay pursuant to a collective bargaining agreement, the provisions of the agreement he submitted do not guarantee overtime.  Rather, they state that "overtime shall be assigned on a rotational basis" and that "[m]andatory overtime will be required anytime that a shift is below minimum staffing requirements and no other employee has volunteered to work the overtime."  PFR File, Tab 3 at 12-13.  Accordingly, the appellant has not established that he is entitled to overtime pay.  *See Tisdell*, 94 M.S.P.R. 44, ¶ 7 (finding that the appellant failed to establish that he was entitled to overtime

---

[2] The appellant contends that the agency failed to return him to work or make an "undue disruption" determination.  PFR File, Tab 3 at 2-3.  The agency, however, could not return the appellant to work because he was never medically cleared for performing his Firefighter duties.  PFR File, Tab 6 at 5-6; Hearing CD (testimony of the Chief of Safety and Emergency Services).

pay where the relevant collective bargaining agreement did not guarantee overtime).

¶15    Because the agency has submitted sufficient evidence showing that it complied with the administrative judge's interim relief order, the appellant's motion to dismiss the agency's petition for review is denied. *See Neuman v. U.S. Postal Service*, 108 M.S.P.R. 200, ¶ 5 (2008) (deciding not to dismiss the agency's petition for review where the agency presented sufficient evidence to show that it had complied with the interim relief order).

The agency proved its charge of failure to follow instructions.

¶16    To prove a charge of failure to follow instructions, an agency must establish that: (1) the employee was given proper instructions, and (2) the employee failed to follow the instructions, without regard to whether the failure was intentional or unintentional. *Hamilton v. U.S. Postal Service*, 71 M.S.P.R. 547, 556 (1996). As discussed below, the agency proved its charge of failure to follow instructions under this standard.

¶17    Contrary to the administrative judge's finding in the initial decision, the agency's instructions in the June 20, 2011 Request for Additional Medical Information were proper. Pursuant to 5 C.F.R. § 339.301(b):

> [A]n agency may require an individual who has applied for or occupies a position which has medical standards or physical requirements or which is part of an established medical evaluation program, to report for a medical examination:
> . . . .
> (2) [o]n a regularly recurring, periodic basis after appointment . . . .

It is undisputed that, as a Firefighter, the appellant occupied a position which had medical standards and physical requirements. ID at 14; *Classification & Qualifications, General Schedule Qualification Standards, Fire Protection and Prevention Series, 0081*, OPM.GOV, http://www.opm.gov/policy-data-oversight/classification-qualifications/general-schedule-qualification-

standards/0000/fire-protection-and-prevention-series-0081/ (last visited May 13, 2014). Accordingly, the agency had authority under 5 C.F.R. § 339.301(b)(2) to require the appellant to report to a periodic medical examination.

¶18 The appellant's position as a Firefighter required him to function without supervision while under extreme stress in emergency lifesaving situations and as the sole medical authority available. IAF, Tab 6, Subtab 4H at 4. As part of his duties, he was responsible for assessing any particular emergency situation to establish medical priorities without advice or direction and for directing any personnel present and the movement of equipment to effect life-saving operations. *Id*.

¶19 The agency physician and the agency physician assistant who conducted the appellant's periodic medical examination on September 21, 2010, testified that they needed medical documentation from the VA relating to the appellant's military disability retirement in order to complete the medical examination and to find that the appellant had the continuing capacity to meet the physical and medical requirements of his position. Hearing CD (testimony of the agency physician and the agency physician assistant). In particular, the agency physician and agency physician assistant testified that they had significant concerns about the appellant's PTSD and the reasons for his retirement from the U.S. Air Force as a Reservist Firefighter. *Id*. The agency physician testified that a 50 percent VA disability rating based on PTSD, as reported by the appellant during a September 2, 2010 examination, represented a significant social and/or cognizant impairment for a chronic relapsing disorder. *Id*. The physician explained that the appellant had changed medications by his September 2010 examination and was taking a number of significant psychotropic drugs that could cause fatigue and affect coordination and cognitive memories. *Id*. He explained that, because PTSD symptoms ebb and flow, the ongoing use of these medications indicated significant, and possibly worsening, symptoms. *Id*. He further testified that, although he had reviewed a February 9, 2010 letter from the appellant's

physician, it lacked the details necessary for the agency clinic to evaluate the appellant objectively for safety-sensitive duties in light of the diagnosed PTSD. *Id*. The physician also explained that a diagnosis and PTSD rating alone were insufficient to determine whether the appellant was impaired. *Id*.

¶20 When the appellant failed to comply with the clinic's request that he provide information relating to his military disability retirement, the agency issued the appellant a March 8, 2011 Request for Additional Medical Information, followed by a June 20, 2011 Request for Additional Medical Information, seeking this information. IAF, Tab 6, Subtabs 4H, 4O. Specifically, the agency stated in the June 20, 2011 Request for Additional Medical Information that an agency physician assistant and an agency physician needed further information regarding the reason for the appellant's disability retirement from the U.S. Air Force Reserve and the supporting documentation to ensure the appellant met the standards of his position as a Firefighter. *Id*., Subtab 4H.

¶21 The agency was entitled to request medical documentation related to the appellant's military disability retirement as part of the periodic medical examination, and he was obligated to provide the documentation as part of his duty to cooperate with the examination. *See* 5 C.F.R. § 339.102(c) (an employee may face an adverse action if he refuses "to be examined in accordance with a proper agency order"). Moreover, the agency's request for the disability retirement documentation from the appellant in the June 20, 2011 Request for Additional Medical Information was job-related and consistent with business necessity and was narrowly tailored to its specific concerns regarding the appellant's ability to meet the requirements of his Firefighter position. *See* 5 C.F.R. § 339.103 (actions under 5 C.F.R. Part 339 must be consistent with Equal Employment Opportunity Commission (EEOC) Americans with Disabilities Act (ADA) regulations, citing to the predecessor to the current ADA regulations); 29 C.F.R. §§ 1630.13(b), 1630.14(c) (generally, a disability-related inquiry or medical examination must be "job-related and consistent with business

necessity," and an employer "may make inquiries into the ability of an employee to perform job-related functions"). Because the agency's request for additional medical documentation was job-related and necessary to make an informed management decision, the agency was authorized to require the appellant to produce medical information relating to a psychiatric condition, and to discipline the appellant for refusal to do so. *Cf. Scott v. Napolitano*, 717 F. Supp. 2d 1071, 1083-85 (S.D. Cal. 2010) (recognizing that an employer does not violate the ADA by conducting a narrowly tailored mental examination where there is a reasonable concern about an employee's mental health, but finding the particular questions posed to be broader and more intrusive than necessary). Accordingly, under the circumstances in this case, we find that the agency's request for the appellant's medical documentation in the June 20, 2011 Request for Additional Medical Information was proper.[3]

¶22    In order to prove a charge of failure to follow instructions, the agency must also establish that the employee failed to follow the instructions at issue. *See Hamilton*, 71 M.S.P.R. at 556. Here, the administrative judge correctly found that the appellant failed to follow the instructions in the June 20, 2011 Request for Additional Medical Information. In the June 20, 2011 instructions, the agency asked that the appellant submit the following information from his physician: (1) a history of the appellant's medical condition; (2) a diagnosis and prognosis, including an estimated date of full or partial recovery, if any;

---

[3] In the initial decision, the administrative judge cited to *Doe v. Pension Benefit Guaranty Corporation*, 117 M.S.P.R. 579 (2012), in finding that the agency's instructions in the June 20, 2011 Request for Additional Medical Information were not proper. ID at 14, 17. However, *Doe* is inapposite to this case because the appellant in *Doe* was not subject to medical standards or physical requirements. *See Doe*, 117 M.S.P.R. 579, ¶ 28. Unlike the appellant in *Doe*, the appellant in the instant case was subject to periodic medical examinations under 5 C.F.R. § 339.301(b)(2). ID at 14; *see Doe*, 117 M.S.P.R. 579, ¶¶ 27-28 (distinguishing situations involving medical standards or physical requirements).

(3) identification of specific restrictions, which related to the attached position description; and (4) a determination of whether the appellant was able to perform in a light duty capacity.  IAF, Tab 6, Subtab 4H at 1.

¶23    Although the appellant argues both below and on review that he submitted a February 9, 2010 letter from his physician, the administrative judge properly found that this letter did not provide the medical information requested by the agency.  ID at 13; IAF, Tab 15 at 22; PFR File, Tab 4 at 4.  Although the letter explained the medications the appellant was taking to manage his PTSD, it did not provide a history of his medical condition and a diagnosis and prognosis, or set forth any restrictions associated with the attached position description.[4]  IAF, Tab 6, Subtab 4H at 4-10, Tab 15 at 22.    Because the administrative judge considered the evidence as a whole, drew appropriate inferences, and made reasoned conclusions, we discern no reason to disturb the administrative judge's finding that the appellant failed to follow the instructions as set forth in the specification listed by the agency in support of its charge.  *See Broughton v. Department of Health & Human Services*, 33 M.S.P.R. 357, 359 (1987); *see also Crosby v. U.S. Postal Service*, 74 M.S.P.R. 98, 106 (1997).    Based on the foregoing, we sustain the agency's charge of failure to follow instructions.

The agency established nexus and that the penalty of removal was reasonable.

¶24    We find that that the agency has met its burden to establish nexus here because the charge of failure to follow instructions relates directly to the efficiency of the appellant's service.  *See Howarth v. U.S. Postal Service*, 77 M.S.P.R. 1, 7 (1997) (finding that there was nexus between the appellant's refusal to comply with the agency's legitimate instruction to submit for alcohol

[4] The February 9, 2010 letter indicated that the appellant's condition did not interfere with use of certain equipment or with driving.  IAF, Tab 15 at 22.  However, it neither affirmatively stated that the PTSD caused no other restrictions related to his position nor represented that he had no such additional restrictions.  *Id.*

testing and the efficiency of the service because failure to follow instructions inherently affects the agency's ability to carry out its mission). Furthermore, as discussed below, we find that the agency-imposed penalty of removal was within the tolerable limits of reasonableness.

¶25 Where, as here, all of the agency's charges have been sustained, the Board will review an agency-imposed penalty only to determine if the agency considered all of the relevant factors and exercised management discretion within tolerable limits of reasonableness. *Woebcke v. Department of Homeland Security*, 114 M.S.P.R. 100, ¶ 7 (2010); *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 306 (1981). In determining whether the selected penalty is reasonable, the Board gives due deference to the agency's discretion in exercising its managerial function of maintaining employee discipline and efficiency. *Woebcke*, 114 M.S.P.R. 100, ¶ 7. The Board recognizes that its function is not to displace management's responsibility or to decide what penalty it would impose but to assure that management judgment has been properly exercised and that the penalty selected by the agency does not exceed the maximum limits of reasonableness. *Id.* Thus, the Board will modify a penalty only when it finds that the agency failed to weigh the relevant factors or that the penalty the agency imposed clearly exceeded the bounds of reasonableness. *Id.*

¶26 After reviewing the record in this case, we find that the deciding official properly considered the relevant *Douglas* factors in making his penalty determination, including the nature and seriousness of the offense, the appellant's position as a Firefighter, the appellant's past disciplinary record, the clarity of being on notice, and the potential for rehabilitation. IAF, Tab 6, Subtab 4B at 4. Regarding the nature and seriousness of the offense, the deciding official stated that the agency needed the medical documentation requested in the June 21, 2011 Request for Additional Medical Information to make an informed decision regarding whether the appellant could be returned to full duty. *Id.* The deciding official also considered that the appellant had recently been suspended for 14

days for failure to follow instructions regarding his medical clearance.[5] *Id*. The deciding official also considered mitigating factors, including the appellant's length of service and performance on the job. *Id*. In this regard, the deciding official noted that the appellant had an excellent work record with a long history of "fully successful performance." *Id*. The deciding official, however, found that these mitigating factors did not outweigh the seriousness of the appellant's misconduct. *Id*.

¶27    Based on the foregoing, we find that the deciding official considered the relevant *Douglas* factors and that the agency properly exercised management discretion in imposing the penalty. Thus, under the circumstances in this case, we find that the penalty of removal was within the tolerable limits of reasonableness. *See Hernandez v. Department of Agriculture*, 83 M.S.P.R. 371, ¶¶ 12-13 (1999) (finding that the administrative judge erred in mitigating a penalty of removal for failure to follow instructions and fiscal irregularities based solely on the employee's years of service and his satisfactory performance); *Thompson v. U.S. Postal Service*, 50 M.S.P.R. 41, 46 (1991) (finding removal to be a reasonable penalty where the appellant failed to follow his supervisor's instructions), *aff'd*, 965 F.2d 1065 (Fed. Cir. 1992) (Table).

The appellant failed to establish his claim of disability discrimination.

¶28    In his cross petition for review, the appellant contends that the administrative judge erred in denying his affirmative defense of disability discrimination. PFR File, Tab 4 at 5-6. In finding that the appellant failed to establish his affirmative defense of disability discrimination, the administrative judge applied a disparate treatment analysis. ID at 25-31. However, to the extent that the appellant is asserting that the agency discriminated against him on the

---

[5] The notice of proposed removal referenced the appellant's 14-day suspension for failure to follow instructions. IAF, Tab 6, Subtab 4G at 1-2.

basis of his disability by requiring him to submit medical documentation regarding his PTSD, the administrative judge should have applied a different standard to the appellant's claim. *See Clark v. Potter*, EEOC Appeal No. 01992682, 2001 WL 1526433, at \*3-\*4 (E.E.O.C. Nov. 20, 2001) (finding that the administrative judge erred in applying a disparate treatment analysis to an employee's claim that the agency discriminated against him by requiring him to undergo a fitness-for-duty examination); *see also Southerland v. Department of Defense*, 119 M.S.P.R. 566, ¶ 20 (2013) (the Board generally defers to the EEOC on issues of substantive discrimination law unless the EEOC's decision rests on civil service law for its support or is so unreasonable that it amounts to a violation of civil service law). Specifically, as discussed below, the administrative judge should have determined whether the agency's medical inquiry was "job-related and consistent with business necessity." *See Clark*, 2001 WL 1526433, at \*4. For the following reasons, we find the appellant has not prevailed on his disability discrimination claim under this standard.

¶29      "The ADA imposes significant restrictions on an employer's freedom to make medical inquiries of employees."[6] *Watkins v. Potter*, EEOC Appeal No. 01981800, 2001 WL 1097442, at \*2 (E.E.O.C. Aug. 29, 2001). Under 42 U.S.C. § 12112(d)(4)(A), an employer "shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business

---

[6] As a federal employee, the appellant's claim of discrimination on the basis of disability arises under the Rehabilitation Act of 1973. However, the regulatory standards for the ADA have been incorporated by reference into the Rehabilitation Act, and the Board applies them to determine whether there has been a Rehabilitation Act violation. 29 U.S.C. § 791(g); *Pinegar v. Federal Election Commission*, 105 M.S.P.R. 677, ¶ 36 n. 3 (2007); 29 C.F.R. § 1614.203(b).

necessity."  The EEOC has promulgated regulations implementing this statutory provision.  *See* 29 C.F.R. §§ 1630.13(b), 1630.14(c).

¶30      Generally, a disability-related inquiry or medical examination may be "job-related and consistent with business necessity" if an employer "has a reasonable belief, based on objective evidence, that: (1) an employee's ability to perform essential job functions will be impaired by a medical condition; or (2) an employee will pose a direct threat due to a medical condition."  *Watkins*, 2001 WL 1097442, at \*2.  "Direct threat means a significant risk of substantial harm to the health or safety of the individual or others that cannot be eliminated or reduced by reasonable accommodation."  29 C.F.R. § 1630.2(r).

¶31      It is the employer's burden to show that its disability-related inquiries and requests for examination are job-related and consistent with business necessity.  *Watkins*, 2001 WL 1097442, at \*2.  The appellant alleges that the agency regarded him as disabled, and therefore he is an individual with a disability within the meaning of the ADA.  PFR File, Tab 9 at 3-4.  However, the ADA's restrictions on disability-related inquiries and medical examinations apply to individuals both with and without disabilities.  *Watkins*, 2001 WL 1097442, at \*2.  Therefore, the appellant is protected by these restrictions regardless of whether he qualifies as disabled within the meaning of the ADA.

¶32      Upon review of the record, we find that the agency has met its burden of showing that its June 20, 2011 instructions to the appellant were job-related and consistent with business necessity.  The agency has not presented sufficient evidence to satisfy the second prong, that it had a reasonable belief, based on objective evidence, that the appellant posed a direct threat due to a medical condition.  There is no evidence that the appellant was violent or posed a significant risk of substantial harm. *See Clark*, 2001 WL 1526433, at \*4 (finding that the agency failed to show that the complainant posed a direct threat due to a medical condition where there was no evidence that the complainant was physically violent or would do any harm).  However, as discussed below, the

agency has shown that it had a reasonable belief, based on objective evidence, that the appellant was unable to perform the essential job functions of his Firefighter position due to his PTSD.

¶33     Record and testimonial evidence indicates that the appellant suffered from, and was being treated for, PTSD since at least 2009. As previously noted, the agency issued its June 20, 2011 instructions requesting information relating to the appellant's PTSD. An agency physician and physician assistant testified that they needed additional information to medically clear the appellant based on their significant concerns regarding his PTSD and the reasons for his retirement from the U.S. Air Force as a Reservist Firefighter. Hearing CD (testimony of the agency physician and the agency physician assistant). The agency physician further testified that, although he had reviewed a February 9, 2010 letter from the appellant's physician, the letter lacked the details necessary for the agency clinic to objectively evaluate the appellant for safety-sensitive duties in light of the diagnosed PTSD. *Id*.

¶34     We find that the agency has shown that it had a reasonable belief that the appellant was unable to perform the essential job functions of his Firefighter position due to his PTSD. In particular, the documentation provided by the appellant did not provide sufficient information regarding his PTSD and whether he was impaired. *See Calicott v. Potter*, EEOC Appeal No. 01A01169, 2003 WL 21634364, at *2 (E.E.O.C. Jul. 2, 2003) (finding that the agency had a sufficient basis for ordering a fitness-for-duty examination where the medical documentation provided by the employee lacked relevant facts and information regarding his current medical status). The agency had a sufficient basis for seeking clarification about the appellant's PTSD based on the agency physician's and the physician assistant's significant concerns regarding the appellant's psychiatric condition. *See id*.

¶35     Because the agency's June 20, 2011 instructions to the appellant were job-related and consistent with business necessity, the agency did not violate

42 U.S.C. § 12112(d) and 29 C.F.R. §§ 1630.13(b), 1630.14(c), when it ordered the appellant to submit medical documentation relating to his PTSD. The appellant, therefore, has failed to establish his disability discrimination claim.

## ORDER

¶36        This is the final decision of the Merit Systems Protection Board in this appeal. Title 5 of the Code of Federal Regulations, section 1201.113(c) (5 C.F.R. § 1201.113(c)).

## NOTICE TO THE APPELLANT REGARDING YOUR FURTHER REVIEW RIGHTS

You have the right to request further review of this final decision.

### Discrimination Claims: Administrative Review

You may request review of this final decision on your discrimination claims by the EEOC. *See* Title 5 of the United States Code, section 7702(b)(1) (5 U.S.C. § 7702(b)(1)). If you submit your request by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit your request via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, NE
Suite 5SW12G
Washington, D.C. 20507

You should send your request to EEOC no later than 30 calendar days after your receipt of this order. If you have a representative in this case, and your representative receives this order before you do, then you must file with EEOC no

later than 30 calendar days after receipt by your representative.  If you choose to file, be very careful to file on time.

<u>Discrimination and Other Claims:  Judicial Action</u>

If you do not request EEOC to review this final decision on your discrimination claims, you may file a civil action against the agency on both your discrimination claims and your other claims in an appropriate United States district court.  *See* 5 U.S.C. § 7703(b)(2).  You must file your civil action with the district court no later than 30 calendar days after your receipt of this order.  If you have a representative in this case, and your representative receives this order before you do, then you must file with the district court no later than 30 calendar days after receipt by your representative.  If you choose to file, be very careful to file on time.  If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security.  *See* 42 U.S.C. § 2000e5(f) and 29 U.S.C. § 794a.


FOR THE BOARD:


_____
William D. Spencer
Clerk of the Board
Washington, D.C.